# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JOAN MARTIN,**

           **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:10-cv-764-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

           **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's decision to deny Plaintiff's applications for Social Security Disability Insurance benefits and Supplemental Security Income. For the reasons set forth herein, the decision of the Commissioner is **REVERSED and REMANDED**.

## Procedural History

Plaintiff filed an application for Disability Insurance Benefits and an application for Supplemental Security Income, alleging that she became disabled on August 2, 2004 (R.95-103). The applications were denied initially and upon reconsideration, and Plaintiff requested and received a hearing before an Administrative Law Judge ("the ALJ") (R. 22-44). On July 15, 2009, following the hearing, the ALJ issued an unfavorable decision (R. 11-19). The Appeals Council denied Plaintiff's request for review (R. 1-3, 6), rendering the ALJ's decision the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481, 422.210(a) (2010). This action timely followed (Doc. No. 1), and the parties consented to the jurisdiction of the undersigned United States Magistrate Judge. The parties have briefed the issues and the matter is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## Nature of Claimed Disability

Plaintiff alleged disability beginning on August 2, 2004, due to "migraine headaches everyday and muscle spasms in shoulders" (R. 125). In a Disability Report, Plaintiff also asserted: "I believe I'm Bypolar. I haven't told my DR'S everything." (R. 137).

*Summary of Evidence before the ALJ*

At the time of the ALJ's decision, Plaintiff was 42 years old, with a high school education and past relevant work as a machine operator, assembly worker, cook, and fast food worker (R. 28, 29, 41-42).

Plaintiff's pertinent medical history is set forth in detail in the ALJ's decision and, in the interests of privacy and brevity, will not be repeated here, except as necessary to address Plaintiff's objections. In addition to the medical records of the treating providers, the record includes the opinions of non-examining state agency consultants, the forms and reports completed by Plaintiff with respect to this claim, as well as the testimony at the administrative hearing of Plaintiff and a Vocational Expert. By way of summary, the ALJ found that Plaintiff had severe impairments of disorders of the back (discogenic and degenerative), migraines, and asthma (R. 13), and the record supports this uncontested finding. The ALJ determined that Plaintiff's impairments did not meet or medically equal one of the impairments listed in the Listing of Impairments (the Listings), 20 C.F.R. pt. 404, subpt. P, app. 1 (R. 15), and determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. 404.1567(b) and 416.967(b) (R. 15). The ALJ determined that Plaintiff could perform her past relevant work as an assembly worker and a fast food worker, and was therefore not disabled (R. 18). Relying on the Medical-Vocational Rules as a framework, the ALJ made additional findings that there were other jobs that existed in the national economy that Plaintiff could perform given her age, education, work experience and a RFC for light work (R. 18). The ALJ also noted that "assuming the claimant is found to have the residual functional

capacity for the sedentary work, considering the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 201.28." (R. 18).

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" 357 F.3d at 1240 n. 8 (internal quotation and citation omitted); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff raises several inter-related issues for review, claiming: 1) the ALJ erred in failing to consider all of Plaintiff's impairments and in ignoring opinions from her treating physicians; 2) the

ALJ erred in relying on vocational expert testimony without inquiring whether the testimony conflicted with the Dictionary of Occupational Titles as required by Social Security Ruling 00-4p; 3) the ALJ erred after failing to complete a Psychiatric Review Technique Form as required by the regulations; and 4) the ALJ erred in failing to determine whether the claimant suffered from a severe impairment resulting from her Major Depressive Disorder and Post Traumatic Stress Disorder.  The Court reviews these objections in the context of the sequential evaluation used by the ALJ.

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  29 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).  The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

**The finding at step two**

An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R.

§ 404.1521.[1] An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. The ALJ has a duty to consider all impairments, both singly and in combination, when making an analysis of disability. 20 C.F.R. § § 404.1523 and 416.923.

A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Comm'r of Social Security,* 265 F.3d 1214, 1219 (11th Cir. 2001). A mere diagnosis, however, is insufficient to establish that an impairment is severe. *See Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002). "The severity of a medically ascertained impairment must be measured in terms of its effect upon [a claimant's] ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *Id., citing McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). A claimant has the burden of proof to provide substantial evidence establishing that a physical or mental impairment has more than a minimal effect on a claimant's ability to perform basic work activities. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984). Thus, a "[c]laimant need show only that his impairment is not so slight and its effect not so minimal." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir.1986).

The medical records show that Plaintiff often presented to her treating provider complaining of chronic pain, but the records pertaining to her alleged "bypolar" [sic] disorder are few. The

---

[1] Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as capacities for seeing, hearing, and speaking; understanding, remembering and carrying out simple instructions; responding appropriately to supervisors and fellow employees and dealing with changes in the work setting; and the use of judgment. *Rodriguez v. Astrue ,* 2011 WL 486118, 3 (M.D. Fla. 2011) (internal citations omitted).

Commissioner correctly notes that in multiple visits to her doctors between February 2006 and January 2009, Plaintiff rarely complained of any mental symptoms, and her mental status exams were routinely normal (R. 179-81, 184-86, 235, 245-46, 273-74). The treatment notes, however, confirm a diagnosis of "depression, multiple psycho social issues" (R. 313, 278, 294), treatment with Cymbalta (an anti-depressant) (R. 278, 294, 299, 308), and Valium, for a diagnosis of "anxiety state, unspecified." *See, e.g.* R. 233, 261, 279. Moreover, on September 3, 2008, Plaintiff was evaluated by Dr. Richard Jaszewski who opined that the claimant was suffering from chronic hepatitis C, grade 1 with stage 1-2, documented about ten months previously by a liver biopsy (R. 228-229, 338-339). Dr. Jaszewski recommended that Plaintiff "see a therapist initially to get clearance for stable depression prior to initiating treatment, as well as to follow with a therapist throughout treatment, since the medications can worsen depression" (R. 229, 339). Plaintiff presented to MHP-Life Counseling on January 15, 2009 (R. 366-368). She presented with a difficult family and social history, including drug use, domestic abuse, and health, financial and legal issues. *Id.* She indicated that she cries a lot, experiences helplessness, hopelessness, isolates herself, and had lost interest in formerly enjoyable pursuits. *Id.* On mental status exam, Plaintiff was fully oriented with fair insight and judgment; her mood and affect were depressed; and her short term memory was impaired, although her long term memory was unimpaired (R. 366). Plaintiff was assessed with Major Depressive Disorder and Post Traumatic Stress Disorder with a global assessment of functioning of 45 (R. 368). Prognosis was fair (R. 368). Plaintiff continued to see her therapist through the time of the hearing (R. 371-377; 30).

In his decision, the ALJ set forth the findings pertaining to Plaintiff's mental impairment allegations (R.14), but he did not identify her depression as a "severe" impairment at step two. The Plaintiff's burden at step two is light. However, "the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a

-6-

combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *see also Heatly v. Comm'r of Soc. Sec.*, No. 09-12426, 2010 WL 2331416, at *1 (11th Cir. June 11, 2010). Here, consistent with the regulations and applicable law, the ALJ credited Plaintiff with severe impairments at step two and proceeded forward with the sequential evaluation. Thus, if Plaintiff's depression should have been included as severe at step two, the omission is only error if the ALJ subsequently failed to fully account for functional limitations arising from it. The Court finds that to be the case here.

In this circuit, "where a claimant has presented a colorable claim of mental impairment, the Social Security Regulations require the ALJ to complete a [Psychiatric Review Technique Form], append it to the decision, or incorporate its mode of analysis into his findings and conclusions." *Moore v. Barnhart,* 405 F.3d 1208, 1214 (11th Cir. 2005). This technique requires separate evaluations on a four-point scale of how the claimant's mental impairment impacts four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* at 1213-14, citing 20 C.F.R. § 404.1520a-(c)(3-4). The ALJ is required to incorporate the results of this technique into the findings and conclusions. 20 C.F.R. § 404.1520a-(e)(2). Failure to do so requires remand. *Id.* at 1214. Here, it is undisputed that the ALJ did not complete a PRT, nor did he incorporate the evaluation of the four functional areas into his decision. The Commissioner asserts that this is not error, in that Plaintiff's mental impairment was not a "colorable claim."

> The Commissioner contends that no colorable claim of mental impairment was shown in that:
>
> Plaintiff alleged that she was "bypolar" [sic] in her disability report at the reconsideration level, but she did not allege a mental impairment in her original disability report or in her request for a hearing (Tr. 68, 125, 137). She also did not mention mental health problems in her report of functioning submitted to the Agency (Tr. 110-19). Furthermore, at the hearing, when the ALJ asked Plaintiff what impairments she felt caused her to stop working, Plaintiff did not mention depression (Tr. 29).

-7-

(Doc. No. 17).

For his part, the ALJ also relied on this asserted lack of complaint about depression, noting:

> [T]he claimant has a history of some depression which appears to have begun in the late 2008, for which she underwent treatment from January 2009 through April 2009 (Exhibit l7F), although she did not appear to be taking antidepressant medication at any point (Exhibit 13F). At the time for the hearing, the claimant did not indicate that depression was affecting her ability to work, which suggests that the claimant's depressive disorder is not as severe as the GAF of 45-49 would suggest. . . .

(R. 17).

These conclusions are factually inaccurate, and thus, not supported by substantial evidence. Plaintiff *was* treated with anti-depressants for her depression (*see, e.g.,* R. 278: "Psych: Depression, Cymbalta helping") as well as Valium for an anxiety disorder, and, at the hearing, Plaintiff's attorney contended that Plaintiff's major depression met or equaled the listing for Affective Disorders (R. 30, *see also* R. 32). While it is true that Plaintiff herself may not have used the actual words "major depression" in her reports and filings, she did note that she just "don't care how I look anymore" (R. 111), "I can't work with people period" (R. 68), and "There [ ]time[s] I don't even care to live" (R. 132); all claims which are indicative of a depressed mood.

In sum, the record shows a long standing diagnosis of a mental impairment, confirmed by a second treating provider who listed specific findings following her examination,[2] with treatment (counseling and medications) for same. While the Court makes no findings as to the severity of Plaintiff's mental impairment with respect to her vocational outlook (such being the exclusive province of the ALJ), it is clear that Plaintiff's claim of such an impairment is, at the very least, "colorable" and remand for further evaluation, included the completion of a PRT, is required.

---

[2] The Court is not persuaded by the Commissioner's argument that Plaintiff's mental impairment was not established by the required "signs, symptoms and laboratory findings." (Doc. No. 17 at 10-12). There are no laboratory findings for the diagnosis of depression or anxiety disorders. The therapist used the accepted diagnostic technique of the mental status examination and complete patient history to support her conclusions.

**The findings at steps three and four**

In addition to the error in evaluating Plaintiff's mental impairment, remand is warranted for failure to properly evaluate the medical opinions of record in formulating Plaintiff's RFC. Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d).

The ALJ must "state with particularity the weight he gave different medical opinions and the reasons therefore." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1986). As a general rule, a

treating physician's opinion is normally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

The Eleventh Circuit recently clarified the standard the Commissioner is required to utilize when considering medical opinion evidence. In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. Jan. 24, 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id.* (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, *supra*). The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1178–79 (*quoting Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir.1981)).

Applied here, the medical record includes the opinions of several providers regarding the claimant's physical limitations (R. 347, 363, 364). On April 23, 2007, Dr. Kelly Briden and Karel Schram, PAC opined that Plaintiff may "possibly" be able to work "if she found a job with the restrictions of max lift 20 pounds, no bending/lifting, sustained standing, walking, may not be able to work due to exacerbations of chronic pain, would need every 30 minute position changes or breaks, may need to lie down." (R. 364). It appears that Dr. Briden and Karel Schram were treating providers at the clinic Plaintiff utilized (*see* R. 173, noting various visits with provider Schram, and R. 205 - copies to Dr. Briden). On May 22, 2007, a Medical Needs form was completed by Dr. Julia Hall and Karel Schram, indicating that Plaintiff would have the following work-related limitations: "No sustained standing, bending, lifting, twisting; max lift 20 lbs; needs every 30 minute position changes; may have to sit down at times; may not be consistently available for work due to flare ups of chronic

-10-

pain." (R. 363). Dr. Hall is listed in emergency room records as Plaintiff's primary care physician (R. 342) and is copied on other medical records, as well (R. 229, 230, 340-41, 351-53). On March 18, 2008, Dr. Wayne Kohn and Ellen Stibitz, PAC, who are treating providers (R.149-155, 173, 235, 247249, 257, 258, 265, 268, 270, 271, 280, 282-3, 289, 290, 353, 361,and 377-78)[3] opined that Plaintiff could work at any job, with the limitation of "no exertion," as her endurance was limited due to chronic fatigue resulting from her Hepatitis C infection (R. 347). None of these opinions are addressed in the ALJ's decision, let alone given a particular weight (R. 14-27). Under the *Winschel* standard, this is plain error requiring reversal.[4] On remand, the Commissioner should fully evaluate and weigh all medical opinions.

### The finding at step four (and five)

Plaintiff last contends that the ALJ erred in relying on vocational testimony after failing to inquire whether the testimony conflicted with the Dictionary of Occupational Titles, as required by Social Security Ruling 00-4p. The ALJ's decision makes clear that, in fact, the ALJ did *not* rely on vocational testimony in this case. At hearing, the vocational expert advised as to the classification of Plaintiff's past work (R. 41-42). In his decision, the ALJ found, at step four, that Plaintiff's RFC did not preclude her from performing her past relevant work, "as defined by C.F.R. 404.1567 and 416.967 and the Dictionary of Occupational Titles." (R. 18). Moreover, in the alternative finding at step five, the ALJ applied the Medical-Vocational Rules ("the Grids") in determining that there are other jobs in the national economy that Plaintiff could perform. *Id.* The ALJ did not mention the vocational testimony in making either of these findings. No error is shown as to this issue.

---

[3] The Commissioner's assertion that "the record does not indicate that Drs. Briden, Hall, or Kahn [sic] ever treated Plaintiff, examined Plaintiff, or even reviewed Plaintiff's medical records" (Doc. No. 17) is clearly wrong.

[4] The Commissioner's argument that this is harmless error in that these opinions "are not supported by substantial evidence" fails to persuade. It is not the task of the Court to evaluate and weigh medical opinions in the first instance; that is for the ALJ.

-11-

## Conclusion

As the administrative decision was not made in accordance with proper legal standards, it is **REVERSED and the matter is REMANDED** under sentence four of 42 U.S.C. § 405(g), with instructions 1) to fully evaluate the asserted mental impairment and incorporate the findings in the administrative decision; 2) to consider and explain the weight given to each of the medical opinions; and 3) to conduct any additional proceedings deemed appropriate. **The Clerk is directed to enter judgment accordingly, and close the file.**

**DONE** and **ORDERED** in Orlando, Florida on July 29, 2011.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record